UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**RYAN LEE WEGELE,**

       **Plaintiff,**

v.                                                  **3:15-cv-1061-J-34JBT**

**JUAN LUYANDO, individually,
CITY OF JACKSONVILLE,
R.G. BLALOCK, individually,
JACKSONVILLE BEACH
POLICE DEPARTMENT,**

       **Defendants.**

_____

**DEFENDANT JUAN LUYANDO'S TRIAL BRIEF
REGARDING QUALIFIED IMMUNITY AS APPLIED TO THE
FOURTEENTH AMENDMENT AFTER *KINGSLEY v. HENDRICKSON***

COMES NOW, the Defendant JUAN LUYANDO ("Luyando"), by and through the undersigned attorney, and pursuant to the Court's order on June 30, 2017 (Doc. 64), hereby submits this trial brief regarding the below question presented by the Court.

**Question Presented by the Court**

In light of the United States Supreme Court's decision in *Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 192 L.Ed. 2d 416 (2015), if a Court in the Eleventh Circuit finds that a constitutional violation of the Fourteenth Amendment has been established, can the Court consider the second prong of the qualified immunity analysis, whether the law was clearly established at the time of the event that the officer's action violated the Constitution?

Luyando respectfully submits to the Court that the question is answered in the affirmative.

## The Pre-*Kingsley* Rule in the Eleventh Circuit

The general rule concerning when a trial court determines whether a government official may benefit from qualified immunity was that the court would first determine whether the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001). If a constitutional violation was established, the court would then decide whether the defendant violated clearly established law at the time of the alleged misconduct. *Id.* In 2009 the Supreme Court reconsidered this approach and concluded, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223 (2009). Lower courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, considering the circumstances of the particular case at hand. *Id.*

In this case, the parties have agreed that Wegele's excessive force claim is asserted under the Fourteenth Amendment. Under decisional law in the Eleventh Circuit, a plaintiff asserting claims of excessive force in violation of the Eighth or Fourteenth Amendments could overcome the defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights had been violated.[1] *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002); *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). The Eleventh Circuit created this rule because the subjective element required to establish an excessive-force violation of the Eighth or Fourteenth Amendments is so extreme that every conceivable set of circumstances in which this constitutional

---

[1] In the Eleventh Circuit, clams by pretrial detainees alleging violations of the Fourteenth Amendment are evaluated under the decisional law of both the Eighth and Fourteenth Amendments. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). However, the Supreme Court explained in *Kingsley* that the decision addressed claims under the Fourteenth Amendment only, and not the Eighth. *Kingsley*, 135 S.Ct. at 2475. Considering this, *Cottrell*/*Bozeman* and their progeny are probably no longer good law on this point.

violation occurs is clearly established to be a violation of the Constitution. *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

Under the subjective standard that existed at the time of this incident, a jailor's use of force against a pretrial detainee would have been excessive under the Constitution only if it "shock[ed] the conscience." *Danley*, 540 F.3d at 1307. The use of force does not "shock the conscience," and is not unconstitutional if it is applied "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, if the force was applied "maliciously and sadistically to cause harm," then it would have "shock[ed] the conscience," and would have been excessive under the Eighth or Fourteenth Amendments. *Id*.

The Eleventh Circuit has distinguished the subjective intent required to hold a government official liable for violating the Fourteenth Amendment, from the objective standard required to hold an official liable under the Fourth Amendment. In *Johnson v. Breeden*, *supra*, the Eleventh Circuit explained that the qualified immunity analysis formulated under *Saucier* involved a claim for excessive force under the Fourth Amendment. *Johnson*, 280 F.3d at 1321. Because the constitutional analysis under a Fourth Amendment claim turns solely on whether the use of force is objectively reasonable, one could conceivably use force that violates the Fourth Amendment, but is not clearly established to be constitutionally excessive by prior decisions. *Id.* The distinguishing aspect of an excessive force claim under the Fourteenth Amendment however, is that a plaintiff cannot establish the first prong of the qualified immunity analysis, a violation of the constitution, without demonstrating the officer intended to apply excessive force maliciously and sadistically for the very purpose of causing harm. *Id.*

With that understanding, assuming a court determines that the officer used excessive force

violation occurs is clearly established to be a violation of the Constitution. *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

Under the subjective standard that existed at the time of this incident, a jailor's use of force against a pretrial detainee would have been excessive under the Constitution only if it "shock[ed] the conscience." *Danley*, 540 F.3d at 1307. The use of force does not "shock the conscience," and is not unconstitutional if it is applied "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, if the force was applied "maliciously and sadistically to cause harm," then it would have "shock[ed] the conscience," and would have been excessive under the Eighth or Fourteenth Amendments. *Id*.

The Eleventh Circuit has distinguished the subjective intent required to hold a government official liable for violating the Fourteenth Amendment, from the objective standard required to hold an official liable under the Fourth Amendment. In *Johnson v. Breeden*, *supra*, the Eleventh Circuit explained that the qualified immunity analysis formulated under *Saucier* involved a claim for excessive force under the Fourth Amendment. *Johnson*, 280 F.3d at 1321. Because the constitutional analysis under a Fourth Amendment claim turns solely on whether the use of force is objectively reasonable, one could conceivably use force that violates the Fourth Amendment, but is not clearly established to be constitutionally excessive by prior decisions. *Id.* The distinguishing aspect of an excessive force claim under the Fourteenth Amendment however, is that a plaintiff cannot establish the first prong of the qualified immunity analysis, a violation of the constitution, without demonstrating the officer intended to apply excessive force maliciously and sadistically for the very purpose of causing harm. *Id.*

With that understanding, assuming a court determines that the officer used excessive force

in violation of the Fourteenth Amendment, the law is clearly established that all such force violates the Constitution, because "the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs," is clearly established as violative of the Constitution. *Id.* at 1321-22; *accord, Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*."); *Skelly v. Okaloosa County Bd. Of County Com'rs*, 456 Fed.Appx. 845, 847 (11th Cir. 2012). Thus, prior to *Kingsley*, Luyando would not have been able to avail himself of the qualified immunity defense if Wegele demonstrated that Luyando used excessive force in violation of the Fourteenth Amendment. However, both the Eleventh and Seventh circuits have interpreted *Kingsley* and relevant case law to apply a qualified immunity analysis.

**Qualified Immunity and the Fourteenth Amendment After *Kingsley***

The United States Supreme Court's decision in *Kingsley v. Hendrickson* removed the requirement that a plaintiff prove an officer's state of mind when asserting an excessive force claim under the Fourteenth Amendment. There, the Court held that a pretrial detainee need only show that force purposely or knowingly used against him was objectively unreasonable. 135 S.Ct. at 2472-2473.

The plaintiff in *Kingsley* sued two officers under § 1983 claiming they used excessive force against him in violation of the Fourteenth Amendment. *Id.* at 2470-71. After an adverse jury verdict, the plaintiff appealed and the Seventh Circuit held that "the law required a 'subjective

inquiry' into the officer's state of mind. There must be 'an actual intent to violate [the plaintiff's] rights or reckless disregard for his rights.'" *Id.* at 2471. Recognizing a split in the circuits regarding whether a claim brought by a pretrial detainee must satisfy a subjective standard or only an objective standard, the Supreme Court accepted certiorari.

The Supreme Court held that once a purposeful or knowing state of mind is established, the "appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 2473. The Court rejected the previously held subjective standard, that a pretrial detainee "must prove that the use of force was not 'applied in a good-faith effort to maintain or restore discipline' but, rather, was applied 'maliciously and sadistically to cause harm.'" *Id.* at 2475. In describing the new standard of objective reasonableness, the Supreme Court relied on its decision in *Graham v. Conner*, where it explained, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 2473 (*citing Graham*, 490 U.S. 386, 396). The *Kingsley* court continued by explaining that the standard requires a court to:

> [M]ake this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'

*Kingsley*, 135 S. Ct. at 2473 (*citing Graham*, 490 U.S. at 396, and *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Further, the Court adopted the considerations articulated in *Graham* for determining whether a particular use of force is reasonable. *Id.*

The Supreme Court in *Kingsley* spoke to this Court's question in two regards. First, the Supreme Court adopted the language it used in *Graham*, stating that the reasonableness of force used

under the Fourteenth Amendment must be judged from the "perspective of a reasonable officer on the scene, including *what the officer knew at the time*, not with the 20/20 vision of hindsight." *Id.* at 2473 (emphasis added). The undersigned would submit that this language is another manner of articulating the second prong of the *Saucier* qualified immunity analysis. Second, the Supreme Court explained that under the objective reasonableness standard, since the Court limited liability for excessive force to intentional and knowing acts, an officer would not be "liable for excessive force unless he has violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 2474 (quoting Saucier, 533 at 202). The standard is no longer so extreme that the qualified immunity question is foreclosed.

Since the *Kingsley* decision, courts in the Eleventh Circuit have adjudged excessive force questions under the Fourteenth Amendment using the objective reasonableness standard, notwithstanding whether they occurred before the *Kingsley* decision was published. In *Shuford, et al. v. Conway, et al.*, 666 F. App'x 811 (11th Cir. 2016), the Eleventh Circuit considered whether a "Rapid Response Team" of correctional officers violated the Fourteenth Amendment by using SWAT-team-style "dynamic entry" techniques that "involved a combination of force and one or more 'distraction devices' to subdue an inmate." *Id.* at 815. With little discussion, the Eleventh Circuit began its analysis of the qualified immunity issue by determining whether the "facts alleged show a violation of a constitutional right." *Id.* at 816. Analyzing *Shuford* under the obective reasonableness standard, the Eleventh Circuit reversed the District Court's grant of qualified immunity to the officers involved. In deciding whether the defendants acted objectively reasonable, the Eleventh Circuit decided the level of force used was not reasonable in light of the *Graham*

considerations. Further, in determining whether the law was clearly established at the time, the panel recognized it was clearly established law in this circuit that "[o]nce a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Id.* at 817 (*citing Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008)).

In *Jacoby v. Baldwin County, et al.*, 2016 WL 6575054 (11th Cir. Nov. 7, 2016), the Eleventh Circuit considered whether spraying a pretrial detainee with pepper spray and then placing him in a restraint chair for eight and ½ hours, while still wearing his pepper-sprayed clothes, constituted a violation of the Fourteenth Amendment. Again, the Court considered whether the defendants violated the Constitution under the objective reasonableness standard in light of the *Graham* considerations. *Id.* at 2. However, the Court decided the qualified immunity question by relying on pre-*Kingsley* case law, "which applied the old "sadistic or malicious" standard for excessive force." *Id.* at 5. The Court, relying on *Danley, supra*, applied the legal principle that jailers cannot continue to use force against a compliant inmate.[2]

On remand from the Supreme Court in *Kingsley*, the Seventh Circuit considered first the constitutional question under the objective reasonableness standard and then the defendants' qualified immunity defense. *Kingsley v. Hendrickson*, 801 F.3d 828, 831 (7th Cir. 2015). The Seventh Circuit held that a jury instruction including language reflecting malicious intent was not

---

[2] It bears pointing out that the Eleventh Circuit agreed with what the Seventh Circuit noted on remand in *Kingsley*, "that the Supreme Court's holding only eliminated the requirement that a plaintiff show the official acted with subjective malice, not the standard for the amount of force that can be permissibly employed. <u>Before and after</u> the Supreme Court's decision in this case, the standards for the amount of force that can be permissibly employed remain the same.... the law clearly established that the amount of force had to be reasonable...." (internal citations and quotations removed; emphasis in original). *Shuford v. Conway*, 666 F. App'x 811 n.1 (11th Cir. 2016).

harmless error, stating, "the jury also might have concluded that the officers, while unreasonable in their approach, did not have a reckless or malicious intent." *Id.* With that, the Seventh Circuit next considered the defendants qualified immunity argument, that because the circuits were split on the subjective intent issue, the law was not clearly established that their actions violated the Constitution. *Id.* at 831. After considering the argument, the Seventh Circuit denied qualified immunity based upon a material dispute over the facts of the case.[3]

**CONCLUSION**

With the Supreme Court's decision in *Kingsley*, the standard by which excessive force complaints are judged is the same from the moment an officer seizes a person in the constitutional sense, until that person is convicted. Whether an officer has used excessive force against a pre-trial detainee is judged against an intent-neutral objective reasonableness standard. Because of this, a jury could find that Luyando's level of force was excessive under the Constitution, but based on jury interrogatories, this Court could find that the law was not clearly established that under the circumstances here, Luyando's force was not constitutionally excessive.

---

[3]As further persuasive authority, a District Court in the Middle District of Florida has applied the objective reasonableness standard to excessive force claims by a pre-trial detainee and found the defendants protected by qualified immunity. *Rojo v. Holderbaum*, 2016 WL 7116207 (M.D. Fla. Dec. 7, 2016).

Respectfully submitted,

ROBERT D. KLAUSNER
Florida Bar No. 244082
PAUL A. DARAGJATI
Florida Bar No. 713813
KLAUSNER, KAUFMAN,
JENSEN & LEVINSON, P.A.
7080 N.W. 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Fax: (954) 916-1232

By: */s/ Paul A. Daragjati*
    Paul A. Daragjati
    Counsel for Defendant Luyando

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

    */s/ Paul A. Daragjati*
    Counsel for Defendant Luyando